*In re* K.A. *et al.*, Minors (The People of the State of Illinois, Petitioner-Appellee, v. Melissa Adkins, Respondent-Appellant).—*In re* K.A. *et al.*, Minors (The People of the State of Illinois, Petitioner-Appellee, v. Walter McDonald, Respondent-Appellant).

Fourth District Nos. 4—02—0461, 4—02—0488 cons.

Argued November 13, 2002.—Opinion filed January 2, 2003.

APPLETON, J., specially concurring.
MYERSCOUGH, P.J., dissenting.

William H. Bertram (argued), of Satter, Beyer & Bertram, of Pontiac, for appellant Melissa Adkins.

Robert P. Follmer (argued), of Pontiac, for appellant Walter McDonald.

Thomas J. Brown, State's Attorney, of Pontiac (Norbert J. Goetten, Robert J. Biderman, and David E. Mannchen (argued), all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Paul G. Mason, of Fairbury, guardian *ad litem*.

JUSTICE KNECHT delivered the opinion of the court:

In December 1998, the State sought to terminate the parental rights of respondent, Walter (Bert) McDonald, to his children, K.A. and C.McD. In November 1999, the trial court granted the motion. In December 1999, Bert filed a posttrial motion seeking to vacate the November judgment. After the hearing, the court took the motion under advisement, stating it would bring the parties back into court to orally announce its ruling. Instead, the court entered a written order in March 2000 but the parties were not advised of the entry of the order.

In June 2000, the trial court conducted a permanency review hearing on the progress of respondent mother, Melissa Adkins, in the same case numbers. The parties then learned of the March 2000 order and

the court purported to toll the time limitation for filing an appeal of its termination of Bert's parental rights until that date, June 8, 2000. Respondent parents appealed; but in November 2000, we dismissed the appeal on appellee's motion, which argued the trial court was without jurisdiction to toll the time for filing the notices of appeal. *In re K.A.*, Nos. 4—00—0617, 4—00—0618 cons. (November 15, 2000) (dismissed on appellee's motion), *appeal denied*, 194 Ill. 2d 568, 747 N.E.2d 352 (2001) (denied on April 4, 2001).

In March 2002, respondent parents filed a petition under section 2—1401 of the Civil Practice Law (735 ILCS 5/2—1401 (West 2000)) to vacate the March 2000 termination of Bert's parental rights. In May 2002, the trial court granted the petition, vacated the March 2000 order, and reentered the same order. Respondent parents appeal, challenging the trial court's unfitness and best interests findings as against the manifest weight of the evidence and claiming the trial court violated Melissa's due process rights. We dismiss the appeal.

## I. BACKGROUND

On October 15, 1996, the trial court adjudicated K.A. (born August 30, 1995), the minor child of respondents, Melissa and Bert, neglected pursuant to section 2—3(1)(b) of the Juvenile Court Act of 1987 (Act) (705 ILCS 405/2—3(1)(b) (West 1996)). On November 26, 1996, the court adjudicated K.A. a ward of the court and appointed the Department of Children and Family Services (DCFS) as her guardian with the power to place her. K.A. was initially placed in relative foster care and then returned to Melissa's care on November 25, 1998.

On January 28, 1998, C.McD. (born December 10, 1997), another minor child of Melissa and Bert, was adjudicated neglected also pursuant to section 2—3(1)(b) of the Act (705 ILCS 405/2—3(1)(b) (West 1996)). That same date, C.McD. was made a ward of the court with DCFS appointed as his guardian with the power to place him. DCFS left C.McD. in the custody of Melissa and never removed him.

On December 12, 1998, the State filed a petition to terminate Bert's parental rights, alleging he was unfit because he failed to make reasonable progress toward the return of K.A. and C.McD. within 12 months of the adjudication of neglect pursuant to section 1(D)(m) of the Adoption Act. 750 ILCS 50/1(D)(m) (West 1998). On January 4, 1999, Bert filed a petition for substitution of judge. A new judge was assigned to hear the petition for termination of parental rights on January 5, 1999. On November 10, 1999, the trial court found Bert unfit on the grounds alleged and granted the State's petition.

On December 9, 1999, Bert filed a posttrial motion to vacate the order of termination previously entered. On February 2, 2000, the

trial court heard the motion, took the motion under advisement, and stated it would notify all parties and bring them back to court to announce its ruling orally. The court did not do so. Instead, on March 24, 2000, the court issued a written order denying the posttrial motion. No notice was given to any of the parties the order had been entered, nor was a copy of the order sent to any of the parties.

Melissa's parental rights had not been terminated, and DCFS still held guardianship of K.A. and C.McD. On June 8, 2000, a review hearing was held before the original judge assigned to this case, regarding her progress in caring for the children. The parties then discovered an order denying Bert's posttrial motion had been entered on March 24, 2000. At the review hearing, in an attempt to provide appeal rights for Bert, the judge entered the following order:

> "The court hereby finds that custom and practice of this [c]ounty that the [c]ircuit [c]lerk would provide copies of orders entered to all parties was not followed in regards to the [o]rder [d]enying [the] [posttrial] [m]otion filed on March 24, 2000. The [c]ourt hereby orders that the time limitations for filing an appeal begin to toll on June 8, 2000[,] as the order was not final until June 8, 2000[,] when all parties became aware of said order."

On July 6, 2000, Melissa appealed (No. 4—00—0617) and on July 10, 2000, Bert appealed (No. 4—00—0618). The appeals were consolidated. Upon appellee's motion, which argued respondents' notices of appeal were untimely, because the trial court was without jurisdiction to toll the period for filing the notice of appeal, this court dismissed the appeal. *In re K.A.*, Nos. 4—00—0617, 4—00—0618 cons. (November 15, 2000) (dismissed on appellee's motion).

On March 5, 2002, over 16 months after the appeal was dismissed, Melissa, later joined by Bert, filed a petition pursuant to section 2—1401 of the Civil Practice Law (735 ILCS 5/2—1401 (West 2000)) to vacate the order of March 24, 2000, because the trial court was to have entered the order orally in the parties' presence and no notice of the written order was ever given to the parties until they discovered the entry of the order. This discovery occurred after the 30-day period for filing a notice of appeal had expired, and the additional 30-day period for filing a late notice of appeal had also expired. A hearing was held on this motion on May 15, 2002, at which time the petition was allowed. The trial court vacated its order of March 24, 2000, and then reentered the same order denying the posttrial motion to vacate its order terminating Bert's parental rights.

On June 5, 2002, Melissa filed a notice of appeal with the trial court and on June 12, 2002, Bert did so (No. 4—02—0488). Their appeals have been consolidated, and they filed a joint brief.

## II. ANALYSIS

They argue, first, the trial court erred in construing section 1(D)(m) of the Adoption Act and finding Bert was unfit due to failure to make reasonable progress toward the return of the child, where K.A. was returned to Melissa's custody prior to the filing of the petition to terminate and C.McD. was never removed from Melissa's custody. Second, they contend the trial court's findings that Bert was unfit and termination was in the best interest of K.A. and C.McD. were against the manifest weight of the evidence. Finally, they contend Melissa's due process rights were violated when the State pursued the petition to terminate Bert's parental rights because of her private interest in making decisions concerning the care, custody, and control of her children.

The State argues, first, this court need not address the termination of Bert's parental rights because Bert and Melissa are not entitled to any relief under section 2—1401 and may not challenge the trial court's termination order in this appeal because notice of appeal was untimely filed. Bert and Melissa argue the State has waived any argument regarding the validity of the trial court's action in granting the section 2—1401 petition by failing to file a cross-appeal or a separate appeal. *Lagen v. Balcor Co.*, 274 Ill. App. 3d 11, 14, 653 N.E.2d 968, 970 (1995).

■ We acknowledge the general rule an appellee may not raise any issues on appeal that have not been raised in a cross-appeal. However, the waiver rule is a principle of administrative convenience, an admonition to the parties; it is not a jurisdictional requirement or any limitation upon the jurisdiction of a reviewing court. *Dillon v. Evanston Hospital*, 199 Ill. 2d 483, 504-05, 771 N.E.2d 357, 371 (2002). We conclude waiver does not preclude us from considering the issue because section 2—1401 petitions may not be used as a means of obtaining a new time period in which to appeal from a trial court order. A trial court lacks the authority to extend the time for filing a notice of appeal. *Mitchell v. Fiat-Allis, Inc.*, 158 Ill. 2d 143, 149, 632 N.E.2d 1010, 1012 (1994).

The facts in *Mitchell* are similar to those in this case. In *Mitchell*, a claimant filed a worker's compensation complaint, which was dismissed as not being proved. The determination was upheld on administrative review. *Mitchell*, 158 Ill. 2d at 145-46, 632 N.E.2d at 1010. The claimant's attorney did not discover the order had been entered until more than 30 days had elapsed. Then, upon the suggestion of the circuit court, he filed a section 2—1401 petition to vacate the order, which the trial court granted, after which the court reentered the same order. The claimant then filed a notice of appeal.

*Mitchell*, 158 Ill. 2d at 146-47, 632 N.E.2d at 1011. The appellate court found a section 2—1401 petition was inappropriate for extending the time for filing an appeal beyond the 30-day period provided in Supreme Court Rule 303(a) (155 Ill. 2d R. 303(a)); but found it could exercise jurisdiction on grounds of equity, finding the litigant should not be penalized by his attorney's actions. *Mitchell*, 158 Ill. 2d at 149-50, 632 N.E.2d at 1012.

On appeal, the supreme court noted it previously held a trial court lacked the authority to extend the time for filing a notice of appeal. *Mitchell*, 158 Ill. 2d at 149, 632 N.E.2d at 1012. As for the claim of equity, the court stated it was not insensitive to the concern of penalizing the litigant for his attorney's actions, but the court noted its responsibility to administer its own rules and stated "neither the trial court nor the appellate court has the 'authority to excuse compliance with the filing requirements of the supreme court rules governing appeals.' " *Mitchell*, 158 Ill. 2d at 150, 632 N.E.2d at 1012, quoting *In re Smith*, 80 Ill. App. 3d 380, 382, 399 N.E.2d 701, 702 (1980). The court held the appellate court lacked jurisdiction and dismissed the appeal. *Mitchell*, 158 Ill. 2d at 151, 632 N.E.2d at 1013.

■ Rule 303(a)(1) provides notice of appeal from final judgments in civil cases must be filed with the clerk of the circuit court within 30 days after entry of final judgment. 155 Ill. 2d R. 303(a)(1). Subsection (d) of Rule 303 provides for an extension of this time period for an additional 30 days "[o]n motion supported by a showing of reasonable excuse for failure to file a notice of appeal on time." 155 Ill. 2d R. 303(d). A trial court loses jurisdiction over the matters resolved in its orders after 30 days have elapsed from entry of the orders. *Mitchell*, 158 Ill. 2d at 149, 632 N.E.2d at 1012.

■ It is tempting to attempt to distinguish *Mitchell*. The trial judge told the parties the order disposing of the posttrial motion would be orally entered in their presence. It was not, and they had no actual notice of its entry for well over 60 days. This is also a case involving parental rights, and such cases should be disposed of on their merits. It is also tempting to comment upon the issues and the evidence so the parties would know whether the judgment would have been affirmed. We are also interested in whether Melissa has standing to appeal from an order terminating Bert's parental rights. We will, however, resist temptation and decline the opportunity to address issues not properly before us.

*Mitchell*, 158 Ill. 2d at 151, 632 N.E.2d at 1013, refers to such a dismissal as a harsh result. This description is meant, I suppose, to ameliorate what has happened—we shrug and impliedly suggest we sympathize with the parties, but we are constrained by the rules. And so we are.

## III. CONCLUSION

Appeal dismissed.

JUSTICE APPLETON, specially concurring:
I concur with the decision reached by Justice Knecht but write separately to state that I do so only because our supreme court has commanded this result by its decision in *Mitchell*, 158 Ill. 2d 143, 632 N.E.2d 1010. While I feel bound to adhere to that decision, I would, if free to do so, concur with Justice Myerscough's dissent in this case.

The procedural facts of this case are not unique. Through human error by those in the court system, the parties were deprived of their appellate rights. These kinds of errors occur in every one of the 30 counties in this district. In this instance, the error was committed by the trial court. In most other instances, the errors are committed by the employees of the circuit clerk's office. In both instances, the aggrieved party has no recourse because of the immunities bestowed upon each official.

Our supreme court's admonition to counsel for vigilance in frequent checking with the trial court or the clerk as to the status of an awaited order is, I believe, misplaced. An attorney is rightfully wary of making a pest of himself or herself with the trial court for fear of creating prejudice in the mind of the trial court. It is also unrealistic for counsel to rely on clerk personnel with regard to the status of an order, as those personnel are the same persons who were supposed to have mailed an order in the first place. If they cannot be trusted to mail the order, they probably cannot be trusted to correctly advise as to case status.

A better rule would be to provide a safety valve for the preservation of a party's appellate rights, such as to allow the 30-day period for filing a notice of appeal to run from the actual notice of the entry of an order, where that time is later than its entry and is supported by an affidavit from the trial court or clerk to the effect that an error of omission prevented an appealing party from knowing of the order being appealed within the 30-day period.

PRESIDING JUSTICE MYERSCOUGH, dissenting:
I respectfully dissent. It is not just tempting to distinguish *Mitchell*. We are bound to distinguish *Mitchell*. In this case, the trial court specifically indicated that it would rule in the parties' presence, leading the parties to believe they had no *Mitchell* obligation to check for court rulings. To add insult to injury, the circuit clerk failed to follow the usual and customary practice of providing copies of the court's

order to the parties. If the court had not conducted a review hearing on June 8, 2000, the parties still would not know the court had ruled.

The trial court was correct when it set aside the March 24, 2000, order and entered it June 8, 2000. The court set aside not only a ministerial error (*Graves v. Pontiac Firefighters' Pension Board*, 281 Ill. App. 3d 508, 516, 667 N.E.2d 136, 141 (1996)), but also a judicial error. See *Needham v. White Laboratories Inc.*, 639 F.2d 394, 398 (7th Cir. 1981). The court clearly never expressed its order publicly in words at the situs of the proceeding as required. See *Granite City Lodge No. 272, Loyal Order of the Moose v. City of Granite City*, 141 Ill. 2d 122, 127, 565 N.E.2d 929, 931 (1990).

For these reasons, this court should address the issues and the evidence herein.